ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| HDZ TRANSPORT SERVICES LLC<br><br>Recurrido<br><br>v.<br><br>LUIS HERNÁNDEZ RIVERA Y OTROS<br><br>Peticionarios | TA2026CE00375 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: CA2025CV01384<br><br>Sobre: Cobro de Dinero-Ordinario |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 11 de mayo de 2026.

Comparece la parte demandada y peticionaria, Sr. Luis Guillermo Hernández Rivera (señor Hernández Rivera), mediante un recurso de *certiorari*. Solicita la revocación de la *Resolución Enmendada* emitida el 11 de marzo de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En el aludido dictamen, el TPI se negó a reconsiderar su previa y segunda determinación de no proveer el relevo de la *Sentencia*, dictada en rebeldía el 24 de septiembre de 2025.

## I.

El presente caso tuvo su génesis el 5 de mayo de 2025, ocasión en que la parte demandante y recurrida, HDZ Transport Services LLC (HDZ), presentó una *Demanda* por cobro de dinero en contra del señor Hernández Rivera, su esposa, Sra. Alvia Rosado Falcón, y la Sociedad Legal de Gananciales conformada por ambos.[2] El demandante alegó que

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.

[2] Entrada 1 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI). Cabe señalar que, en cumplimiento de *Orden*, el 26 de mayo de 2025, TDZ consignó la fianza de no residente y solicitó que se dejara sin efecto la paralización decretada. El TPI aceptó la fianza de no residente; y posteriormente, a petición de parte, ordenó la expedición de emplazamientos por edicto. Asimismo, el TPI ordenó el traslado del caso a la Región Judicial de Bayamón. Véanse, entradas 5-6, 9, 13 y 15-16 SUMAC-TPI.

el 12 de julio de 2024 le vendió al señor Hernández Rivera una grúa Grove RT 760E 60TONS Serial #222326 del 2002 por la cantidad de $140,000.00. HDZ sostuvo que el pago por cheque fue devuelto por falta de fondos. En el membrete del cheque 0710 a favor de HDZ constan Tetrad Enterprises, LLC (Tetrad Enterprises) y el señor Hernández Rivera, quien lo firmó.[3] Posteriormente, el 9 de agosto de 2024, el demandante recibió un pago electrónico parcial por la cantidad de $70,000.00 emitido por otra entidad: Matrix Propertie[s].[4] HDZ indicó que el señor Hernández Rivera no satisfizo la cantidad restante facturada, pese a sus múltiples solicitudes. Agregó que la parte demandada se ha beneficiado económicamente de la grúa, objeto de la acción en cobro de dinero. Por lo anterior, solicitó el saldo de la suma adeudada, intereses, penalidades, costas, gastos y honorarios de abogado.

Observados los trámites procesales de rigor y a petición de HDZ,[5] el 18 de septiembre de 2025, el TPI notificó la *Orden* mediante la cual anotó la rebeldía de la parte demandada.[6] Luego, el 23 de septiembre de 2025, notificada al día siguiente, el TPI dictó *Sentencia.*[7] En esencia, declaró Ha Lugar la *Demanda*; y condenó a los demandados al pago de $70,000.00 por concepto de principal; más costas y gastos por los requerimientos de cobro a razón de $300.00; $5,000.00 en honorarios de abogado por temeridad; y el 8.75% de intereses legales.

Así las cosas, el 3 de octubre de 2025, el señor Hernández Rivera presentó un escrito intitulado *Moción asumiendo representación legal; solicitud levantamiento de rebeldía; solicitud reconsideración, solicitud de dejar sin efecto sentencia por dejar de acumular una parte indispensable; solicitud de relevo de sentencia por nulidad de la sentencia y solicitud de desestimación de demanda contra el codemandado Luis Guillermo*

---

[3] Anejo 2 de la entrada 20 SUMAC-TPI.
[4] Refiérase, al estado bancario anejado en la entrada 28 SUMAC-TPI.
[5] Entradas 18 y 20 SUMAC-TPI.
[6] Entrada 19 SUMAC-TPI.
[7] Entrada 22 SUMAC-TPI. Véase, además, entrada 23 SUMAC-TPI.

*Hern[á]ndez Rivera.*[8] En síntesis, alegó que la falta de comparecencia se debió a que convalecía de una cirugía y al desconocimiento de la causa en su contra, ya que HDZ no contrató con él, sino con Tetrad Enterprises. Arguyó que el cheque 0710 fue emitido por Tetrad Enterprises, por lo que no se configuraba una causa de acción en contra de su persona. Abogó por el relevo de la *Sentencia* al dejarse de acumular una parte indispensable, en alusión al ente jurídico; así como la desestimación de la *Demanda*, ya que adolecía de una reclamación que justificara la concesión de un remedio.

El 17 de octubre de 2025, el demandante se opuso al levantamiento de la rebeldía y a las peticiones incoadas por la parte demandada.[9] Subrayó que la corporación Tetrad Enterprises LLC no fue incluida en la *Demanda*, ya que la deuda reclamada era una personal en contra de la parte demandada. Evidenció que había inquirido el pago extrajudicialmente y que los demandados hicieron caso omiso a sus requerimientos. Refutó las alegaciones sobre que no contrató con el señor Hernández Rivera en su carácter personal y refirió a la *Declaración Jurada* prestada con anterioridad y a los mensajes de texto intercambiados entre ambos contendientes.[10]

Apuntaló que la parte demandada omitió decir que, el 28 de febrero de 2025, Tetrad Enterprises se acogió a la quiebra. Añadió que no constaba en los documentos sometidos en el proceso la inclusión de HDZ como acreedor de la deuda objeto del pleito; ni el demandante fue notificado del proceso de quiebra. Tampoco Tetrad Enterprises reportó la grúa comprada en 2024 como parte de sus activos o pasivos. Así, coligió que Tetrad Enterprises reconoció que no era el dueño de la grúa ni había contraído la deuda reclamada por el demandante, sino que la obligación recayó sobre el señor Hernández Rivera. Además, HDZ enfatizó que el

---

[8] Entrada 24 SUMAC-TPI.
[9] Entrada 28 y anejos SUMAC-TPI.
[10] Anejo 1 de la entrada 20 SUMAC-TPI.

pago parcial por "wire transfer" antes referido fue emitido por otra entidad u otro *alter ego* de los demandados. Por igual, se opuso a la desestimación al entender que ostentaba una causa de acción válida en contra de los demandados.

El 18 de octubre de 2025, notificada el día 20 siguiente, el TPI dictó una *Resolución*, en la cual declaró No Ha Lugar la moción presentada.[11]

Así las cosas, mientras se observaban los trámites de ejecución de la *Sentencia*,[12] el 17 de febrero de 2026, los demandados presentaron nuevamente una *Moción de Relevo de Sentencia bajo la Regla 49.2 (5) y (6)*.[13] En resumen, reiteraron su petitorio para que se dejara sin efecto el dictamen en rebeldía y se permitiera su comparecencia. Alegó que la *Sentencia* adolecía de validez, ya que imponía responsabilidad personal a quien no era la parte obligada. Insistió en que el contratante era Tetrad Enterprises y que el cheque 0710 sin fondos era corporativo. De otro lado, peticionó la paralización del procedimiento de ejecución.[14]

El demandante se opuso a la solicitud de relevo.[15] Planteó que la determinación disputada había advenido final y firme. Sostuvo que los demandados no apelaron oportunamente y que la decisión judicial tomó en consideración los fundamentos argüidos en esta segunda solicitud. También, mostró evidencia de una cadena de correos electrónicos cursados entre las representaciones legales de los litigantes, en los que el demandado se comprometió a pagar lo adeudado en o antes del 31 de enero de 2026 a cambio de evitar la ejecución. Anunció que el demandando incumplió el acuerdo.

El 18 de febrero de 2026, el TPI notificó una *Resolución Interlocutoria* y expresó: [16]

> Atendidas las comparecencias de las partes, se provee no ha lugar a la solicitud de relevo de sentencia. Adviértase que el Tribunal previamente consideró argumentos similares. De

---

[11] Entrada 29 SUMAC-TPI.
[12] Entradas 30-32 SUMAC-TPI.
[13] Entrada 33 y anejo SUMAC-TPI.
[14] Entrada 34 SUMAC-TPI.
[15] Entrada 35 y anejo SUMAC-TPI.
[16] Entrada 36 SUMAC-TPI.

los documentos que obran en autos, y específicamente del cheque, a nombre tanto de Tetrad como de Luis Guillermo Hernández Rivera, no se especifica que la firma de este último sea exclusivamente en su capacidad como oficial corporativo.

De igual modo y en armonía a sus pronunciamientos, el TPI decretó No Ha Lugar a la solicitud de paralización.[17]

La parte demandada incoó una *Moción solicitando reconsideración*, a la que anejó documentos corporativos de Tetrad Enterprises.[18] El 11 de marzo de 2026, notificada al día siguiente, el TPI emitió una *Resolución Enmendada*, en la que declinó reconsiderar su decisión.[19] A esos efectos, el TPI continuó con el procedimiento de ejecución.[20]

Inconforme, el 7 de abril de 2026, el señor Hernández Rivera acudió ante nos y señaló la comisión de los siguientes errores:

> ERRÓ EL TRIBUNAL AL IMPONER RESPONSABILIDAD PERSONAL SIN FUNDAMENTO JURÍDICO QUE JUSTIFIQUE LA EXTENSIÓN DE UNA OBLIGACIÓN CORPORATIVA AL PATRIMONIO INDIVIDUAL DEL COMPARECIENTE.
>
> ERRÓ EL TRIBUNAL AL INVERTIR LA CARGA JURÍDICA Y EXIGIR AL COMPARECIENTE DEMOSTRAR QUE NO RESPONDÍA PERSONALMENTE, EN LUGAR DE REQUERIR A LA PARTE DEMANDANTE ESTABLECER LA BASE LEGAL PARA IMPONER DICHA RESPONSABILIDAD.
>
> ERRÓ EL TRIBUNAL AL ADJUDICAR RESPONSABILIDAD SIN LA COMPARECENCIA DEL SUJETO CONTRACTUAL OBLIGADO, CONFIGURÁNDOSE LA OMISIÓN DE PARTE INDISPENSABLE.

---

[17] Entrada 37 SUMAC-TPI.

[18] Entradas 38-39 y sus anejos SUMAC-TPI.

[19] Entrada 47 SUMAC-TPI. El dictamen enmendó la determinación de la entrada 42 SUMAC-TPI.

[20] Es meritorio mencionar que, en otros asuntos, el TPI rechazó la solicitud incoada por el demandante para cancelar una inscripción al derecho de hogar seguro sobre una propiedad sita en Guaynabo y referir el caso al Ministerio Fiscal. HDZ sostuvo que los demandados no residían en dicho inmueble. Posteriormente, el 8 de abril de 2026, el demandante presentó el recurso de *certiorari* TA2026CE00422, ante la consideración de un panel hermano.

Oportunamente, el 14 de abril de 2026, el recurrido presentó su *Oposición a Certiorari*. Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

**II.**

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V R. 49.2, autoriza al tribunal a relevar a una parte de una sentencia, orden o procedimiento por varios fundamentos; a saber: (a) error, inadvertencia, sorpresa o negligencia excusable; (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo ser descubierta a tiempo para solicitar un nuevo juicio; (c) fraude, falsa representación u otra conducta impropia de una parte adversa; (d) nulidad de la sentencia; (e) la sentencia ha sido satisfecha o renunciada; y (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. *Id.* Esta regla no limita el poder del tribunal para "conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento". *Id.* Igualmente, la norma procesal consigna que una moción bajo esta norma no afecta la finalidad de una sentencia ni suspende sus efectos.

La Regla 49.2 de Procedimiento Civil, *supra*, establece que una moción de relevo se debe presentar dentro de un término razonable, pero "en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento". El Tribunal Supremo de Puerto Rico ha resuelto que este plazo es fatal. *Piazza v. Isla del Río, Inc.,* 158 DPR 440, 448 (2003), que cita con aprobación a *Sánchez Ramos v. Troche Toro,* 111 DPR 155, 157 (1981); *Municipio de Coamo v. Tribunal Superior,* 99 DPR 932, 937 (1971); *Srio. del Trabajo v. Tribunal Superior,* 91 DPR 864, 867 (1965). Claro está, dicho término es inaplicable cuando se trata de una sentencia nula. *Náter v. Ramos,* 162 DPR 616, 625 (2004). La determinación de si una solicitud de relevo de sentencia fue presentada dentro de un término razonable descansa en la discreción del Tribunal de Primera Instancia.

*Garriga Gordils v. Maldonado Colón*, 109 DPR 817, 823 (1980). El ejercicio de esa discreción ha de ser imparcial, de manera que adelante los fines de la justicia. *Id.*, págs. 823-824.

En el examen sobre la procedencia de una moción de relevo, el tribunal no dilucida los derechos de las partes ni las controversias jurídicas de la demanda, solamente debe resolver si la parte promovente satisface o no los requisitos estatuidos. El Tribunal Supremo ha opinado que se debe examinar si el peticionario tiene una defensa legítima en sus méritos; el tiempo que media entre la sentencia y la solicitud del relevo; y el grado de perjuicio que pueda ocasionar a la otra parte la concesión de la petición de relevo de sentencia. *Reyes v. ELA et al.*, 155 DPR 799, 809-810 (2001) y los casos allí citados. Empero, la moción de relevo de sentencia no está disponible para corregir supuestos errores de derecho, ni la apreciación o la valoración de la prueba; éstos son fundamentos para la reconsideración o la apelación del dictamen. *García Colón et al. v. Sucn. González*, 178 DPR 527, 542-543 (2010).

Asimismo, si bien la Regla 49.2 de Procedimiento Civil, *supra*, se interpreta liberalmente, el alto foro ha advertido que ésta no constituye una "llave maestra" para reabrir controversias ni es sustituta de un recurso de revisión o una moción de reconsideración. *Vázquez v. López*, 160 DPR 714, 726 (2003). Es necesario que el promovente demuestre que existen razones que justifiquen el remedio solicitado. *Reyes v. ELA et al.*, *supra*, pág. 812. Es decir, aunque el mecanismo de reapertura existe en bien de la justicia, no constituye una facultad judicial absoluta, porque a éste se contrapone la fundamental finalidad de que haya certeza y estabilidad en los procedimientos judiciales, y de que se eviten demoras innecesarias en el trámite judicial. Por tanto, la moción de relevo de sentencia no equivale a que se le deba dar atención desmedida a uno de los dos intereses que hay que balancear. *Piazza v. Isla del Río, Inc.*, *supra*, pág. 448.

El interés de que los pleitos se vean en los méritos amerita protección, pero no puede, bajo toda circunstancia, prevalecer sobre los intereses, igualmente justos, de la parte que ha sido diligente en que se resuelva el caso prontamente y se termine la incertidumbre, y los intereses del público en general en evitar la congestión en los calendarios y las demoras innecesarias en el trámite judicial, promoviendo así la solución justa, rápida y económica de la controversia. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Publicaciones JTS, 2011, T. IV, pág. 1399.

### III.

En la causa de autos, el señor Hernández Rivera alega que el TPI incidió al imponerle responsabilidad personal por la deuda de $70,000.00. El peticionario insiste en que no es el sujeto obligado al pago de la acreencia del recurrido. Asevera que la compraventa de la grúa surgió de un negocio jurídico entre Tetrad Enterprises y HDZ.[21]

Examinamos el auto discrecional postsentencia del título al palio de la Regla 40, *Criterios para la expedición del auto de certiorari*, del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025).[22] Advertimos sobre la norma asentada de que este tribunal intermedio sólo interviene con las determinaciones emitidas por el foro primario en determinadas y excepcionales circunstancias. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

---

[21] Contrario al recurrido, la parte peticionaria no discutió el asunto de la quiebra de Tetrad Enterprises y la alegada omisión de consignar ante el foro federal el activo de la grúa y el pasivo de la deuda contraída con HDZ y que pretende imputar al ente jurídico. Tampoco aludió al compromiso voluntario y personal posterior de pagar la acreencia insatisfecha, realizado extrajudicialmente a través de su representación legal, con el fin de detener el proceso de ejecución.

[22] Al determinar la expedición de un auto de *certiorari*, este Tribunal toma en consideración los siguientes criterios:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En lo que respecta a la revisión de los dictámenes al amparo de la Regla 49.2, *supra,* nuestra evaluación se circunscribe a examinar el ejercicio de la discreción del foro primario al denegar o conceder tal remedio, luego de realizar un balance justiciero de los intereses en pugna. Es decir, no intervenimos con la *Sentencia* de la cual procede la solicitud de relevo ni la evidencia justipreciada, puesto que el dictamen ya advino final y firme. Por consiguiente, la única cuestión a resolver es si la *Resolución Interlocutoria* aquí impugnada, mediante la cual el TPI concluyó —por segunda ocasión— que la parte peticionaria no satisfizo los rigores de la Regla 49.2 *supra,* fue emitida dentro de los parámetros discrecionales del tribunal recurrido.

Luego de un examen detenido del expediente, el derecho aplicable y en observancia a la Regla 40 de nuestro Reglamento, *supra,* concluimos que no se encuentran presentes ninguno de los criterios allí enumerados. La parte peticionaria no ha demostrado que el TPI haya actuado con pasión, prejuicio o parcialidad, que incurrió en craso abuso con el ejercicio de su discreción o en un error manifiesto. Nada en su recurso nos logró persuadir a ejercer nuestra función revisora en esta etapa postsentencia y de ejecución. No identificamos la presencia de circunstancias que justifiquen nuestra intervención con la *Resolución Interlocutoria* que rechazó relevar a la parte peticionaria de la *Sentencia* que pesa en su contra. Habida cuenta de lo anterior, procede la denegación de la expedición del auto de *certiorari.*

## IV.

Por las razones expuestas, acordamos denegar el auto discrecional de *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones